School Board vs. Weber.

## No. 7014.

### SCHOOL BOARD vs. EMILE L. WEBER ET AL.

State and parish officers, and the sureties on their official bonds may be sued, on account of any malfeasance of such officers, in the courts of the parish in which the officers exercise, or may have exercised their functions, no matter where their domiciles may be.

APPEAL from the Seventh Judicial District Court, parish of West Baton Rouge. *Yoist*, J.

*Joseph P. Golsan*, District Attorney *pro tem.*, and *Henry C. Meyers* for defendants and appellees.

*Wickliffe & Fisher* for plaintiff and appellant.

The opinion of the court on the original hearing was delivered by MANNING, C. J., and on the rehearing by EGAN, J.

MANNING, C. J. Weber was formerly treasurer of the School Board of West Feliciana, and this suit is upon his official bond, in which judgment is sought against him and his sureties. The suit was filed in Oct. 1877, and it seems that Weber had changed his residence to Ascension in the preceding January.

On Nov. 9, 1877, he pleaded to the jurisdiction, and on same day filed an exception, but with express reservation of his rights under the former plea, and without prejudice thereto. On 17th. of same month, he answered and in his answer, reconvened. There was no reservation of any rights under the plea to the jurisdiction in the answer, nor do the minutes shew that the court received it without prejudice to that plea.

The lower court sustained the plea to the jurisdiction, and dismissed the suit as to all parties—the grounds of dismissal as to the sureties being, that no judgment could be rendered against them until the amount of the defalcation of the principal shall first be judicially ascertained.

Prior to 1861, the Code of Practice declared the general rule in civil matters to be that one must be sued before the judge having jurisdiction over the place of his domicil, but that the rule was subject to several exceptions. art. 162. In that year, that article was amended so as to read—"it is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicil or residence, and shall not be permitted to elect any other domicil or residence for the purpose of being sued, but this rule is subject to those exceptions expressly provided by law." Acts 1861, p. 137.

The two particulars in which the article was amended are, that the privilege of electing a domicil for the purpose of being sued was expressly denied thereafter, and the clause that the rule is subject to sev-

School Board vs. Weber.

eral exceptions is altered to read, that it is subject to those exceptions expressly provided by law.

Sec. 2. chap. 2 of the Code of Practice treats of the tribunals before which actions are to be brought. Art. 162 is the first one under that head. Art. 165 enacts that there are other exceptions to this rule (i. e. the rule of art. 162) and enumerates them. The 7th. class of exceptions is, in suits to enforce the collections of bonds of state and parish officers, the courts of the parish, in which the officers exercise the duties of their offices, shall have jurisdiction over the sureties, it matters not in what parish they may reside.

If the sureties on an official bond may be compelled to answer a judicial demand against them, based upon the malfeasance of their principal, out of their own domicil, *a fortiori* must the officer himself be amenable to the jurisdiction of the court of that parish in which he exercised his functions and to which he had subjected himself. The Code appears to assume as indisputable that the officer can be sued nowhere else, and in order that the rights of all parties may be determined in one action, compels the sureties to answer before one who is not their judge, and in order to compel them, is at pains to include them in a special exception to the general rule touching jurisdiction, the effect of which would be wholly nugatory if the principal were not suable at the same place and time with them. The exception should not have been sustained. Therefore

It is adjudged and decreed that the judgment of the lower Court is reversed, and the cause is remanded to be proceeded in according to law, the appellee paying costs of appeal.

CONCURRING OPINIONS.

MARR, J. I concur in the decree pronounced in this case by the Chief Justice upon the ground that a parish officer and his sureties are amenable to the jurisdiction of the courts of the parish in which the official duties were to be performed; and that this jurisdiction is not divested by the removal of the officer to another parish.

I do not understand that the court decided, or intended to decide, in Marqueze vs. LeBlanc, 29 Annual, 194, that a defendant might be cited in any other than the parish of his domicile. The majority of the court held that, in a suit by attachment, a person residing in a parish different from that in which the suit is pending may be cited as garnishee, and thus be made a party, and be compelled to answer in the court having jurisdiction of the attachment suit. The distinction was plainly drawn between garnishees in an attachment suit which is pending, and garnishees under *fieri facias* which issues on a judgment, in a

School Board vs. Weber.

suit which terminated with the judgment, and which is no longer pending. In the one case, the pending suit, the garnishee is compelled to answer in a parish other than that of his domicile; in the other, there being no longer a pending suit, the garnishee under *fieri facias* must be sued and cited at his domicile, because the proceeding against him is in the nature of an original suit, not as an accessory to the main action.

I did not concur in the opinion of the majority in that case; and I still adhere to the views expressed in my dissenting opinion. That decision has settled the case so far as garnishees in attachment suits are concerned; but it in no manner modifies the general law which requires suit to be brought at the domicile of the defendant, and the garnishee under *fieri facias* to be cited at the parish of his domicile.

———

Spencer, J. I concur in the decree reversing the judgment appealed from, and overruling defendant's exception to the jurisdiction of the court of West Feliciana.

But I am not prepared to concur in the reasons and grounds upon which the majority of the court rest that decision. I am not satisfied of the correctness of the reasons given. I think there are far better grounds for our decree than those assigned. · To say the least, it is very doubtful whether the principal on an official bond can be brought within the terms of number 7 of article 165, C. P. That article expressly limits itself to *the sureties* on such bonds; and article 162 says that a man must be sued before the judge of his domicile except in cases "*expressly provided for by law.*" The case of a principal on an official bond is nowhere *expressly excepted by law* from the operation of the rule of article 162. I prefer, therefore, to rest my concurrence upon different principles. In the answer of Weber filed *before* any decision upon his plea to the jurisdiction, there is no reservation of his rights to urge that plea; nor did the court, so far as the minutes show, allow him to file it, "without prejudice to that plea," as in the case of the exception referred to.

A plea to the jurisdiction of the court *ratione personæ*, is a "declinatory exception." C. P. 334. It must be pleaded "previous to answering to the merits." C. P. 336. "If one be cited before a judge whose jurisdiction does not extend to the place of his domicile or of his usual residence, but who is competent to decide the case brought before him, and he plead to the merits, instead of declining the jurisdiction, the judgment given shall be valid, except the defendant be a minor." C. P. 93.

Where one answers to the merits without previously demanding a

·decision on his plea to the jurisdiction, or reserving the benefit of it, it is waived. 10 L. 228; 11 R. 418; 13 L. 373; 11 R. 402; 3 A. 222; 4 A. 350.

But here we are met with the objection that article 162 of the Code of Practice prohibits a defendant, even in a pending suit, *from waiving by answer or otherwise* the plea of want of jurisdiction *ratione personæ.* That article reads as follows:

"It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence, and shall not be permitted *to elect any other domicile or residence for the purpose of being sued,* but this rule is subject to those exceptions expressly provided by law."

It is of course contended that this article 162 is inconsistent with and repugnant to article 93, and, therefore, as the latest expression of legislative will, repeals the prior article. In my opinion it is not only not inconsistent with it, but provides for an entirely different case. Article 162 in its first clause announces that it is a general rule that one must be sued before the court of *his domicile.* By its second clause it announces *that it is a general rule* that one shall not be permitted to elect *any other domicile or residence for the purpose of being sued.*

By its third clause it says: "But this rule is subject to those exceptions expressly provided for by law." Now this third clause qualifies the second as well and as much as it does the first clause. The Code of Practice of 1870 is a single statute. Its different articles are all parts of one whole. The recognized principles of interpretation require us to give effect, if possible, to every article or section thereof. Now, *the general principle* announced in article 162, that one shall not elect another domicile or residence for the purpose of being sued, is declared by the article itself to be subject "to the exceptions expressly provided by law." Now, if article ninety-three declares that where one has been *actually sued* in another parish than his domicile, and appears and answers .without pleading to the jurisdiction, "the judgment shall be valid," if such an appearance can be considered "*an election of another* domicile for the purpose of being sued," why should not this case be considered ·one of those "exceptions" to the rule of article 162? But to my mind it is clear that the second clause of article 162 was enacted for a wholly different class of cases. It was enacted originally in 1861 to prevent persons from the country parishes in giving mortgages to their factors in New Orleans from electing New Orleans as their domicile and residence for the purposes of suit on these mortgages. This *election of domicile* had grown into almost *a customary clause* in such transactions, and had become a crying evil. The planter would elect, for the purposes of suit, the counting-house of his merchant as his domicile, and

appoint and designate some clerk therein as his agent to receive service of citations. The consequence was that men were constantly being sold out under proceedings of which they had no notice. Thereupon the Legislature re-enacted article one hundred and sixty-two and made it what it now is in the Code of 1870, evidently with no thought or intention of repealing article ninety-three, which continued a part of the old Code and is still retained in the new. Article one hundred and sixty-two, as well said by Mr. Justice DeBlanc, in "Marqueze vs. Le Blanc," 29 Annual, 194, simply prohibits a party from agreeing to another domicile or residence for *the purpose of being sued;* in other words forbids *agreements* of the kind I have mentioned above, whereby the party chooses, elects, *in advance* another residence, for the purposes of a contemplated suit. With what propriety of speech can Weber in the case before us be said to have "elected" the parish of West Feliciana as "his domicile or residence for the purpose of being sued?" He has made no such election. The law provides how an election of domicile shall be made. "It is made in writing, is signed by the party making it, etc." C. C. 42. But the interpretation of article 162 contended for not only expunges article 93 from the Code of Practice, not only renders *invalid and void* judgments which that article declares "shall be valid," but it renders nugatory and inoperative articles 333, 334, 335, and 336. It expunges from the Code the whole doctrine of declinatory exceptions for want of jurisdiction *ratione personœ.* These articles declare that such exceptions must be pleaded "*in limine*," "previous to answering to the merits," but under the construction contended for, they may be pleaded not only after answer, but after *final judgment.* Want of jurisdiction *ratione personœ* is raised to the dignity of want of jurisdiction *ratione materiœ.* A party brings his suit against his debtor in a parish where he erroneously supposes him to reside. He cites him. The debtor appears, makes no exception and defends the suit vigorously, and is defeated—but not vanquished! He turns upon his creditor and says: "I am not a resident of this parish where you have sued me. I could not be sued here. I reside in another parish," and "could not elect any other domicile for the purpose of being sued." Your judgment is a nullity, as much so as though rendered by a court without jurisdiction *ratione materiœ.* If such a doctrine is to prevail, how is a suitor to know when he has got a judgment? I submit that if argument *ab inconvenienti* is to be resorted to, that the evils resulting from this interpretation would be greater than are to be found from persons having themselves clandestinely sued away from their domiciles.

In conclusion, I insist that the "election of a domicile for the purpose of being sued," presupposes that the party has *not yet been sued,* and implies the *selection and designation* of a place of domicile for the

purposes of a *future* suit. The doing of this is what the second clause of article 162 forbids. It presents a wholly different case from that contemplated by article 93, which provides for the case of a suit *actually pending*, and where there has been no ·previous election, selection, or previous designation of domicile for the purposes of the suit. I· can not give my assent to a construction of one section of a statute which, in my opinion, unnecessarily annuls not only preceding but subsequent sections of the same statute. So far, therefore, as our predecessors may have held that article 162 repealed or nullified article 93, and articles 333, 334, 335, and 336, I think they were wrong, and that this is a proper occasion to so declare.

DeBlanc, J. I concur in the dissenting opinion of Mr. Justice Spencer.

### On Application for Rehearing.

Egan, J. Section 351, R. S. 1870, provides that if it becomes necessary to enforce the collection of any bonds that may be taken under and in pursuance of this act (among which was that of defendant, Weber,) and the sureties reside out of the parish in which the officer exercises, or *may have exercised*, the duties of the office for which the bond was given, shall have jurisdiction over the sureties, it matters not in what parish they may reside. The bonds when registered operate a mortgage on all real estate of the principal obligor in the parish where he exercises his office (same section), and whenever execution shall issue, any lands of the principal which belonged to him at the date of registry of the bond may be seized and sold without regard to any subsequent transfer or change of title, and in whatever hands the same shall be found. R. S. 1870, s. 354. But no sale of the property of the sureties shall be made till that of the principal is discussed—same section. All bonds of this class are required to be authenticated by the attestation of two witnesses, and the signature of the recorder, which makes them authentic acts. These several provisions indicate the legislative will in regard to the manner of enforcing these obligations, and if not in terms in spirit would seem to give jurisdiction to the court of the parish in which is the hypothecated property of the principal obligor, and where he " exercises, or may have exercised his functions." See C. P. 163 and 164, s. 7. From the very nature of the bond and of the obligations and duties of which it is intended to secure the performance, there must first be judicially ascertained and declared some breach of its conditions and obligations on the part of the principal before any responsibility can be fixed upon the sureties, as their obligations are only for the

School Board vs. Weber.

*faithful performance* of his official duties by the principal. This neces-sitates suit against the principal to fix the liability and amount, and as the law abhors multiplicity of actions, it is apparent that in the very nature of things it is in contemplation of the law that the court of the parish where the functions of the principal are or have been exercised is clothed with jurisdiction to sue all the parties to the bond. So it is held in regard to bonds of administrators and other similar offi\cers, though·they may actually reside elsewhere. All the reason and analo-gies of the law favor this view, and the authorities cited relating to jurisdiction in case of private persons can not be held to apply. There is, however, one feature of the present case which is conclusive of the question of jurisdiction.independent of any other consideration, that is that the obligation of the defendants in the bond sued on is joint, and some of them reside in the parish where the suit was brought. C. P. article 164, s. 6. *The sureties are bound jointly* though in unequal amounts, and up to those amounts for the faithful discharge of the duties of the principal. That is the principal obligation which the sure-tyship is intended to secure. It is therefore unlike a similarly drawn unconditional obligation to pay money in several amounts.

The rehearing is therefore refused.

SPENCER, J. I concur in the decree on the grounds of my original opinion.